## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| | ) | |
| HIGHLANDS OF MONTOUR RUN, LLC, | ) | Case No. 10-21678 |
| an Illinois limited liability company | ) | |
| | ) | Hon. Pamela S. Hollis |
| Debtor. | ) | |
| | ) | |
| | ) | |

### AGREED FINAL ORDER AUTHORIZING THE LIMITED
### USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

THIS MATTER came before the Court for hearing (the "Hearing") on the motion

(the "Motion") of the above-captioned debtor (the "Debtor") for the entry of an order

(the "Order") (A) authorizing the Debtor to use certain "Cash Collateral" (the "Cash Collateral"),

as such term is defined in section 363(a) of title 11 of the United States Code (the "Bankruptcy

Code"), and, in connection with that authorization, (B) granting certain substitute and additional

liens and other related relief for the benefit of the Prepetition Secured Lender (as defined below)

that possesses liens and security interests in such Cash Collateral.  The Debtor provided notice of

the Motion and the Hearing to, among others:  (a) Wells Fargo Bank, N.A., the "Prepetition

Secured Lender");  (b) the twenty (20) largest unsecured creditors of the Debtor; and (c) the

United States Trustee for the Northern District of Illinois (the "United States Trustee").  The

Debtor and the Prepetition Secured Lender have advised the Court that they have agreed to the

form of this Order.

THE COURT HAS BEEN ADVISED THAT THE DEBTOR AND THE

PREPETITION SECURED LENDER HAVE STIPULATED TO THE FOLLOWING:

A.      On May 12, 2010, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "<u>Petition Date</u>").  The Debtor has retained possession of its property and continues to operate its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.      The Debtor admits, stipulates and agrees that this case constitutes a "single asset real estate" case as defined in section 101(51B) of the Bankruptcy Code.

C.      The Debtor is in possession of its properties and is operating its businesses as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No Official Committee of Unsecured Creditors (the "<u>Committee</u>") has yet been appointed in these cases.

D.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

E.      On or about October 14, 2008, the Debtor and the Prepetition Secured Lender entered into that certain Loan Agreement for the purpose of refinancing certain real property located in Allegheny County, Pennsylvania (the "<u>Prepetition Loan Agreement</u>").  On or about October 14, 2008, the Debtor executed and delivered to the Prepetition Secured Lender a Promissory Term Note Secured by Mortgage (the "<u>Term Note</u>"), which evidences, among other things, that the Prepetition Secured Lender advanced to the Debtor the sum of $23,900,000.00. On or about October 14, 2008, the Debtor executed and delivered to the Prepetition Secured Lender a Promissory Revolving Note Secured By Mortgage (the "<u>Revolving Note</u>", together with the Term Note, the "<u>Notes</u>"), which provided, among other things, that the Prepetition Secured Lender loaned the Debtor the sum of $1,100,000.00.  Pursuant to the Notes, the Prepetition Secured Lender agreed to make, and has made, various advances to the Debtor, and, as a result thereof, on the Petition Date, the Debtor was indebted to the Prepetition Secured

Lender pursuant to the Notes in the aggregate principal amount of $23,900,000 under the Term

Note and $1,100,000 under the Revolving Note (that combined principal amount, together with

all interest, fees, costs, expenses and other amounts now or hereafter owing or accruing pursuant

to the Notes and the other agreements entered into by the Debtor in connection with the

Prepetition Agreements (as defined below), including without limitation any interest rate swap

transaction, are collectively referred to hereinafter as the "Prepetition Indebtedness").

      F.      The Prepetition Indebtedness is secured by all or substantially all of the Debtor's

assets (such assets immediately prior to the Petition Date being referred to herein as the

"Prepetition Collateral") pursuant to that certain Open-End Mortgage With Absolute Assignment

of Leases and Rents, Security Agreement and Fixture Filing (the "Highlands Mortgage") that

was executed by the Debtor on or about October 14, 2008, as security for the Notes and the

performance of its other obligations to the Prepetition Secured Lender.  Pursuant to the

Highlands Mortgage and related documents (the "Prepetition Security Documents") the

Prepetition Secured Lender has a mortgage lien on and security interest against all real and

personal property relating to the real property located in the City of Coraopolis, County of

Allegheny, Commonwealth of Pennsylvania.  The Highlands Mortgage was recorded on

October 16, 2008 with the Recorder of Deeds of Allegheny County, Pennsylvania at

Instrument No. 2008-93307.

      G.      The security interests in and liens and mortgages upon the Prepetition Collateral

were properly perfected prior to ninety (90) days preceding the Petition Date, and such security

interests, liens and mortgages are valid, choate, enforceable, non-avoidable and of first priority.

      H.      Pursuant to the Prepetition Loan Agreement, the Notes, the Prepetition Security

Documents and the other documents and agreements related to each of the foregoing

(collectively, the "Prepetition Agreements"), the Prepetition Secured Lender has a security

interest in, inter alia, the cash proceeds of, and rents, products and profits from, the Prepetition

Collateral. Cash proceeds, rents, products and profits of the Prepetition Collateral that come into

the possession, custody or control of the Debtor constitute Cash Collateral.

I.        The Prepetition Secured Lender has indicated a willingness to consent to the

Debtor's use of a limited amount of Cash Collateral for a limited period of time and only

pursuant to the terms of this Order, on the condition that the Court, pursuant to sections 361 and

363 of the Bankruptcy Code, provides to the Prepetition Secured Lender as adequate protection

(1) a security interest in and lien and mortgage upon all of the property of the Debtor and its

estate (the "Estate"), whether now existing or hereafter acquired or arising and (2) the other relief

accorded the Prepetition Secured Lender pursuant to this Order.

J.        The Debtor, on behalf of itself and any successors, including, subject

to paragraph 21 below, any successor trustee, examiner or responsible person

(collectively, "Successors") in these or any subsequent proceedings under the Bankruptcy Code,

in consideration of the Prepetition Secured Lender's consent to the use of Cash Collateral

according to the terms of this Order: (a) agree not to contest the validity or enforceability of the

Prepetition Indebtedness or the Prepetition Secured Lender's security interests, mortgages or

liens in the Prepetition Collateral, or the proceeds, rents, products, offspring or profits thereof;

(b) agree not to assert any claim against the Prepetition Secured Lender or the Collateral,

including any set-offs and counterclaims with respect to the Prepetition Indebtedness; and

(c) waive any and all claims they may have to seek avoidance of the Prepetition Secured Lender's

claims or security interests in and mortgages and liens on the Prepetition Collateral, or the

proceeds, rents, products, offspring or profits thereof.

BASED UPON THE MOTION, THE RECORD BEFORE THE COURT, AND

THE COMBINED CONSENT OF THE DEBTOR AND THE PREPETITION SECURED

LENDER TO THE ENTRY OF THIS ORDER, THE COURT FINDS AS FOLLOWS:

i.      The Court has jurisdiction over this case and this proceeding pursuant to 28

U.S.C. § 1334.  Determination of the Motion constitutes a core proceeding as defined in 28

U.S.C. § 157(b)(2).  Venue over this Motion is proper under 28 U.S.C. § 1409(a).

ii.     The Debtor has provided such notice as was practicable under the circumstances

and as may be required by Rule 4001(b) of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") to (1) counsel to the Prepetition Secured Lender (2) the twenty (20)

largest unsecured trade creditors of the Debtor as set forth on the schedule filed by the Debtor

pursuant to Bankruptcy Rule 1007(d) and (3) the United States Trustee of the Hearing by serving

upon them on May 20, 2010 the Motion and a notice of the interim hearing on the Motion and by

serving upon them on June 1, 2010, notice of the hearing on the final relief sought in the Motion.

The Court expressly finds, in view of the urgency of the relief requested and the notice

procedures for objection to the Motion prior to a final hearing thereon, that such notice is

adequate and sufficient under the circumstances and under Rule 4001(b) of the Bankruptcy

Rules, and that no further or other notice need be given.  On May 27, 2010, this Court entered an

order (the "Interim Order") (Docket No. 21) authorizing the Debtor to use Cash Collateral on an

interim basis.

iii.    The Debtor requires Cash Collateral for the payment of operating expenses and to

meet other expenses necessary to preserve its assets and continue its operations.

iv.     The Prepetition Secured Lender will not consent to the usage of Cash Collateral

except on the terms and conditions contained in this Order and is relying on such terms and

conditions in agreeing to the Debtor's use of Cash Collateral on the terms hereof. It is necessary

and appropriate for the Debtor to grant the Prepetition Secured Lender the rights and protections

set forth in this Order.

v.      The Prepetition Secured Lender and the Debtor have (1) negotiated the terms and

conditions of this Order in good faith and at arms-length and (2) offered sufficient evidence of

the good faith of the Prepetition Secured Lender in agreeing to this Order and the Debtor's use of

the Cash Collateral of the Prepetition Secured Lender on the terms set forth herein.

vi.     The Debtor has requested immediate entry of this Order pursuant to Rule

4001(b)(2) of the Bankruptcy Rules. Good cause has been shown for the entry of this Order.

Among other things, entry of this Order will minimize disruption of the Debtor's operations and

is in the best interests of the Debtor, its creditors and the Estate. The terms of the use of Cash

Collateral authorized hereby are fair under the circumstances and reflect the Debtor's exercise of

prudent business judgment consistent with its fiduciary duties.

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

1.      For purposes of this Order, the term "Cash Collateral" shall be deemed to

include all "cash collateral" as defined by section 363(a) of the Bankruptcy Code, all deposits

subject to setoff, and all cash arising from the collection or other conversion to cash of property

of the Debtor in which the Prepetition Secured Lender has a security interest or lien, or have

been granted an adequate protection lien, whether those security interests or liens existed as of

the commencement of these proceedings or arise thereafter pursuant to this Order, the

Bankruptcy Code, or any other applicable law, and whether the property converted to cash

existed as of the commencement of these proceedings or arose or was generated thereafter.

**Cash Collateral Usage**

2.      Subject to the terms and conditions contained in this Order, the Debtor

may use Cash Collateral during the period commencing on the date of this Order through and

including the earlier of (A) 5:00 p.m. (Chicago Time) on August 10, 2010 (the "Budget Period")

and (B) the time when the consent of the Prepetition Secured Lender to the Debtor's use of Cash

Collateral is otherwise terminated pursuant to the terms of this Order.  The Debtor shall use or

consume Cash Collateral during the Budget Period only (1) in accordance with the budget

attached hereto as Exhibit A (the "Budget"), including the time period and category limits set

forth therein, with a permitted (a) 10% deviation of each line item up to $1,000 and (b) 5%

deviation of each line item greater than $1,000, and only for the Budget Period, (2) to make those

payments to the Prepetition Secured Lender required by the terms of this Order (collectively,

the "Adequate Protection Payments") and (3) in compliance with the other terms of this Order.

The Debtor represents and warrants to the Prepetition Secured Lender that the Budget contains

its reasonable, good faith best estimate of (a) the expected revenues of the Debtor and the timing

of the receipt of same for the periods indicated; and (b) the necessary and foreseeable expenses

to be incurred during the period covered by the Budget in the ordinary course of business of the

Debtor and the timing of the incurrence of same.  The Debtor shall not incur any administrative

expenses not described in the Budget.  The Adequate Protection Payments, as provided in the

Budget, shall be paid to the Prepetition Secured Lender in full (with no variance) on the weeks

that they are budgeted to the extent that funds are available.  At the end of each month, the

Debtors shall disburse to the Prepetition Secured Lender all Cash Collateral in excess of the

amounts set forth in the Budget (but allowing for a minimum working capital balance for each of

the succeeding four weeks of the Budget Period of not less than $5,000) to be applied first, to

fund any unpaid Adequate Protection Payments for the current month or any preceding months,

and second to be held in escrow and applied toward the payment of currently outstanding real

estate taxes on the Collateral; provided, however, that any Adequate Protection Payment made

on account of interest accrued between the Petition Date and 90 days after the Petition Date shall

be subject to reallocation in the event that this Court finds that the Prepetition Secured Lender is

not entitled to receive such payments under section 506(b) of the Bankruptcy Code.

> 3.      Notwithstanding anything to the contrary herein, no Cash Collateral may

be used to compensate professional services rendered to or expenses incurred in connection with,

directly or indirectly, (A) the modification, stay or amendment of this Order without the consent

of the Prepetition Secured Lender or (B) a violation, breach or default of this Order or any

provision of the Prepetition Agreements made applicable to this proceeding by this Order,

including, without limitation, any claim or action the purpose of which is to seek or the result of

which would be to obtain any relief (i) invalidating, setting aside, avoiding or subordinating, in

whole or in part, the liens or security interests or mortgages of the Prepetition Secured Lender in

the Collateral (as defined below) or (ii) preventing, hindering or otherwise delaying, whether

directly or indirectly, the assertion, enforcement or realization of the Prepetition Secured Lender

upon any Collateral (as defined below) as permitted by this Order or the Prepetition Agreements.

In addition, and notwithstanding anything to the contrary stated above, and notwithstanding any

amounts otherwise set forth in the Budget, the Debtor may not use any Cash Collateral for any of

the following purposes, except as consented to in advance in writing by the Prepetition Secured

Lender with respect to the Debtor (the "Prohibited Uses"):

> a.      for the payment of any debts or obligations of the Debtor arising
> prior to the Petition Date of any nature or kind whatsoever,
> whether or not such debts or obligations are similar in nature or
> kind to the expense categories described in the Budget;

b.      for the payment of any debts or obligations of the Debtor that are not directly related to the preservation of the Collateral (as defined below);

c.      for any payment, except payment of the management fee set forth in the Budget, to any company, individual or entity related to or affiliated in any way with the Debtor or with any other insider (as defined in section 101(31) of the Bankruptcy Code) of the Debtor;

d.      for prepayment for services that have not yet been rendered, goods that have not yet been received or any other items of expense for which payment is not currently due ("Prepayments"); provided however, that any such Prepayments included in the Budget shall not be a Prohibited Use solely in the amount provided in the Budget;

e.      for the payment of the cost of any capital improvement or material repair to the Collateral (as defined below); and

f.      for the payment of any obligations or expenses incurred by or on behalf of any party or entity other than the Debtor.

4.      The Prepetition Secured Lender shall have the right to terminate the Debtor's right to use Cash Collateral pursuant to the terms of this Order upon (A) a default in the performance of any obligation of the Debtor hereunder including the occurrence of any "Events of Default" listed in paragraph 16 of this Order, (B) the modification, stay or amendment of this Order without the consent of the Prepetition Secured Lender, (C) the institution of any claim or action by the Debtor the purpose of which is to seek or the result of which would be to obtain any relief (i) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Prepetition Secured Lender's liens, mortgages or security interests in the Collateral (as defined below), (ii) preventing, hindering or otherwise delaying, whether directly or indirectly, the Prepetition Secured Lender's assertion, enforcement or realization upon any Collateral (as defined below) as permitted by this Order or (iii) otherwise seeking relief against the Prepetition Secured Lender without its consent, (D) the conversion or dismissal of the Debtor's bankruptcy case or (E) the institution by the Debtor of an action to seek that the Court grant or impose, under

section 364 of the Bankruptcy Code or otherwise, liens, security interests or mortgages on any of

the Collateral (as defined below) equal, superior or subordinate to the Prepetition Secured

Lender's liens, security interests or mortgages on that property.  Upon the termination of the

Debtor's right to use Cash Collateral, the Debtor shall maintain all Cash Collateral in segregated

accounts with such entity as designated by the Prepetition Secured Lender pursuant to section

363(c)(4) of the Bankruptcy Code until the disbursement of the same is ordered by the Court.

    5.  Notwithstanding the foregoing, upon the occurrence an Event of Default

described in paragraph 4(A), the Prepetition Secured Lender's consent to the use of Cash

Collateral shall not terminate until 8:00 a.m. (Chicago Time) on the second business day after the

day on which the Prepetition Secured Lender shall have given written notice (by facsimile or

electronic mail) to the Debtor and its counsel, to counsel of record for any Committee and to the

United States Trustee of its termination of such consent.  For purposes of this paragraph a

business day will end at 5:00 p.m. (Chicago Time).

**Adequate Protection Liens**

    6.  As protection for the Prepetition Secured Lender's interests as of the

Petition Date in the Prepetition Collateral, the Prepetition Secured Lender is hereby granted,

pursuant to sections 361 and 363 of the Bankruptcy Code, a valid, perfected, enforceable and

non-avoidable first priority security interest in and lien and mortgage (the "Replacement Liens")

upon all assets and property of the Debtor and its estate, of any kind or nature whatsoever,

whether now existing or hereafter acquired or arising and all proceeds, rents, products or profits

thereof (collectively, the "Postpetition Collateral" and, together with the Prepetition Collateral,

the "Collateral").  Such Replacement Liens shall be limited to any diminution in value of the

Prepetition Secured Lender's interest in the Prepetition Collateral which occurs during the

pendency of the Debtor's bankruptcy case.  Such security interest, lien and mortgage shall at all

times be senior to the rights of the Debtor and any successor trustee in this or any subsequent

proceedings under the Bankruptcy Code and shall be superior in priority to the security interests,

liens and mortgages of the Prepetition Secured Lender existing prior to the Petition Date.

Notwithstanding the foregoing, (A) the Prepetition Secured Lender is not hereby granted a

security interest or lien in any cause of action of the Estate arising solely under sections 544,

545, 547, 548, 549 or 553(b) of the Bankruptcy Code and (B) the Prepetition Secured Lender's

security interest, lien and mortgage shall be subject to valid, perfected, enforceable and non-

avoidable liens and security interests in the Debtor's assets held by parties other than the

Prepetition Secured Lender as of the Petition Date which are superior in priority to the

Prepetition Secured Lender's security interests, liens and mortgages on such assets.

       7.     The liens, security interests, mortgages, rights and remedies granted to the

Prepetition Secured Lender pursuant to this Order shall not be modified, altered or impaired in

any manner by any plan of reorganization or order of confirmation for the Debtor, or by any

other financings of, extensions of credit to, or incurring of debt by the Debtor, whether pursuant

to sections 363 or 364 of the Code, or otherwise. The liens, security interests, and mortgages

granted pursuant to this Order shall survive the entry of any order which may be entered: (a)

confirming a plan of reorganization for the Debtor; (b) converting this case to a case under

chapter 7 of the Bankruptcy Code; (c) dismissing this case or any successor case; (d) discharging

the Debtor; or (e) pursuant to which this Court abstains from hearing this case or any successor

case.

       8.     The security interests, liens and mortgages granted herein (a) are and shall

be in addition to all security interests, liens, mortgages and rights of set-off existing in favor of

the Prepetition Secured Lender on the Petition Date; and (b) are and shall be valid, choate,

perfected, enforceable, non-avoidable and effective as of the Petition Date without any further

action by the Debtor or the Prepetition Secured Lender, and without the execution, filing or

recordation of any financing statements, security agreements, vehicle lien applications,

mortgages or other documents.  All security interests, liens and mortgages granted herein to the

Prepetition Secured Lender are and hereby are deemed perfected, and no further notice, filing or

other act shall be required to effect such perfection.  If the Prepetition Secured Lender shall, in

its sole discretion, choose to file financing statements, mortgages or other documents or

otherwise confirm perfection of such security interests, liens or mortgages, the Prepetition

Secured Lender is authorized to effect such filings and recordations, and all such financing

statements, mortgages or similar documents shall be deemed to have been filed or recorded at the

time and on the date of entry of this Order.  A photocopy of this Order may, in the discretion of

the Prepetition Secured Lender be filed with or recorded in filing or recording offices in addition

to or in lieu of such financing statements, notices of lien or similar instruments, and all filing

offices are hereby directed to accept such copy of this Order for filing and recording.  If the

Prepetition Secured Lender hereafter requests the Debtor to execute and deliver to the Prepetition

Secured Lender financing statements, mortgages or other instruments or documents considered

by the Prepetition Secured Lender to be necessary or desirable to further evidence the perfection

of the liens, security interests or mortgages granted in this Order, the Debtor is hereby authorized

and directed to execute and deliver those financing statements, instruments and documents.

        9.      The security interests, liens and mortgages granted herein shall secure

payment of (A) the Prepetition Indebtedness in an amount equal to any diminution in value of the

Prepetition Secured Lender's interest in the Prepetition Collateral which occurs during the

pendency of the Debtor's bankruptcy case, whether such diminution is a consequence of (i) the

Debtor's use of Collateral (including the Debtor's consumption of Cash Collateral),
(ii) depreciation or price fluctuation in the Collateral, (iii) the conversion of Prepetition
Collateral into Postpetition Collateral or (iv) any other action, event or circumstance, (B) all
interest payable to the Prepetition Secured Lender, including the interest payable pursuant to
paragraph 13 below, (C) all fees, costs and expenses of the Prepetition Secured Lender and
(D) the aggregate amount of Cash Collateral used by the Debtor (collectively, the "Adequate
Protection Obligation").  The Adequate Protection Obligation shall be afforded administrative
priority status in the full amount allowable under section 507(b) of the Bankruptcy Code.

        10.    Any provision of this Order or the Prepetition Agreements to the contrary
notwithstanding, the liens and any 507(b) claims granted to the Prepetition Secured Lender
pursuant to the Prepetition Agreements and this Order shall be subject and subordinate to a carve
out (the "Carve Out") for:  (a) amounts payable to the United States Trustee pursuant to 28
U.S.C. § 1930(a); and (b) following the earlier of (i) the expiration of the Budget Period and
(ii) the occurrence and during the pendency of an Event of Default (as such term is defined in the
Prepetition Agreements or this Order), the payment of allowed professional fees and expenses
incurred by the Debtor's attorneys retained pursuant to section 327 of Bankruptcy Code after
application of prepetition retainers and in an aggregate amount not to exceed $25,000; provided
however, that the Carve Out shall not include professional fees and disbursements incurred in
connection with prosecuting or asserting any claims or causes of action against the Prepetition
Secured Lender and/or challenging or raising any defense to the Prepetition Indebtedness or the
liens of the Prepetition Secured Lender.  Notwithstanding anything to the contrary herein, no
Collateral, Cash Collateral or any portion of the Carve Out may be used to object to or contest in
any manner, or raise any defenses to, the amount, validity, perfection, priority, extent or

enforceability of the Prepetition Indebtedness or the liens securing the Prepetition Indebtedness, or to prosecute or assert any claims or causes of action against the Prepetition Secured Lender.

11.    Nothing in this Order shall in any way restrict the scope of the Prepetition Secured Lender's prepetition liens, security interests, mortgages, rights of set-off or claims with respect to the Prepetition Indebtedness or the Prepetition Collateral, or the proceeds, rents, products, offspring or profits thereof, and the Prepetition Secured Lender's liens, security interests and mortgages on the Prepetition Collateral, and the proceeds, rents, products, offspring and profits thereof shall extend to the fullest extent permitted by section 552(b) of the Bankruptcy Code. The Prepetition Secured Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Lender or the Collateral.

12.    Nothing contained in this Order or otherwise, and no action or inaction of the Prepetition Secured Lender shall be deemed to be a consent to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Code or otherwise. With the exception of the Carve Out, no costs or expenses of administration that have been or may be incurred in these proceedings, or in any conversion of these proceedings pursuant to sections 105 or 1112 of the Bankruptcy Code or otherwise, or in any other proceeding related thereto, and no priority claims, are or will be prior to or on a parity with the claims of the Prepetition Secured Lender against the Debtor or any successor debtors in possession or trustee, or with the security interests, liens and mortgages of the Prepetition Secured Lenders upon the Collateral.

**Additional Protection**

13.    As further protection for the Prepetition Secured Lender's interests as of the Petition Date in the Prepetition Collateral, the Debtor shall pay to the Prepetition Secured

Lender (A) as and when provided in the Notes, all interest on the Prepetition Indebtedness at the

non-default rate prescribed therein, (B) as and when required to be paid under the Prepetition

Agreements (and otherwise upon request), all reasonable fees, costs and expenses which the

Prepetition Secured Lender is entitled to receive pursuant to the terms of the Prepetition

Agreements, and all fees, costs and expenses incurred in connection with or in preparation for

the Debtor's bankruptcy proceedings and (C) all proceeds of the sale, lease or other disposition of

Collateral outside of the ordinary course of business on account of the Prepetition Indebtedness.

Nothing contained herein shall limit the right of the Prepetition Secured Lender to assert, and

seek allowance of, claims for interest calculated at the default rate prescribed in the Notes.

14.     In addition to the foregoing protections, except where inconsistent with

the Bankruptcy Code, the Bankruptcy Rules or orders of this Court in this case, the Debtor shall

fully comply with the obligations as set forth in the Prepetition Agreements, with respect to

(i) access to the Debtor's books and records and the Prepetition Collateral, which provisions shall

be deemed to apply to all of the Collateral, (ii) inspections, (iii) maintenance and preservation of

Prepetition Collateral, which provisions shall be deemed to apply to all of the Collateral,

(iv) operations and (v) the other provisions therein where not inconsistent with the Bankruptcy

Code, the Bankruptcy Rules or orders of this Court in this case, except that the Debtor need not

comply with representations as to the absence of any proceeding such as the Debtor's bankruptcy

case or provisions requiring the payment of money to the Prepetition Secured Lender, other than

as set forth in this order, or establishing any financial covenants, other than as set forth in this

Order.  In addition, the Debtor shall furnish, or cause to be furnished, on a prompt basis, to the

Prepetition Secured Lender any reports or other information concerning any sale or proposed

sale of the Debtor's assets, including without limitation, such information concerning any sale or

proposed sale of the Debtor's assets, as the Prepetition Secured Lender may from time to time
reasonably request.

15.    In addition to the foregoing, to the extent not provided therein, the Debtor
will provide to the Prepetition Secured Lender, by the 15th day of each month, and in such form
as the Prepetition Secured Lender may reasonably request, (a) a balance sheet for the Debtor,
(b) an operating statement (including variance against the Budget) for the Debtor
and (c) a weekly cash flow report, showing all inflows and outflows and the providers and
recipients of same.  The Debtor will keep, and will cause the management company for any
Collateral to keep, business records of such character, nature and detail as are reasonably
calculated to enable the Prepetition Secured Lender to determine at any time the status of all
Cash Collateral and other Collateral, and shall permit the Prepetition Secured Lender, their
agents and employees, upon reasonable notice during regular business hours, to inspect, audit
and make copies of all records and other papers in the possession, custody or control of the
Debtor and any such management company pertaining to the Collateral and the Cash Collateral.
The Debtor shall also deliver to the Prepetition Secured Lender such other financial and other
information concerning the business and financial affairs the Debtor and the operation of the
Collateral as they may reasonably request from time to time.

16.    The occurrence of any of the following events, unless waived in writing
by the Lender, shall constitute an event of default under this Order (each an "Event of Default",
and collectively, the "Events of Default"):

a.    the obtaining after the Petition Date of credit or the incurring of
indebtedness that is (i) secured by a security interest, mortgage, or
other lien on all or any portion of the Collateral; or (ii) entitled to
priority administrative status which is equal or senior to that
granted to the Prepetition Secured Lender;

b. the Debtor seeking or obtaining authority to use Cash Collateral, except as authorized by this Order;

c. the entry of an order by the Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral;

d. reversal, vacatur or modification of this Order;

e. dismissal of the Debtor's bankruptcy case or conversion of the case to a case under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or examiner with enlarged powers or other responsible person;

f. any material misrepresentation of a material fact made after the Petition Date by the Debtor, or its agents to the Prepetition Secured Lender about the financial condition of the Debtor, or the nature, extent, location or quality of any Collateral;

g. the filing of a chapter 11 plan and related disclosure statement that are not in form and substance acceptable to the Prepetition Secured Lender;

h. the sale after the Petition Date of any portion of the Collateral outside the ordinary course of business;

i. the failure to make any payments to the Prepetition Secured Lender as set forth in this Order when due; and

j. the Debtor's failure to perform any other term, provision, condition, covenant or obligation under this Order.

17. Upon the occurrence of an Event of Default or other violation of this Order, subject to the notice period set forth in paragraph 5 of this Order, and unless the Court orders otherwise after notice and a hearing and pursuant to the applicable provisions of the Bankruptcy Code, (a) the Debtor shall no longer have the right to use Cash Collateral pursuant to this Order, (b) any stay under sections 362 or 105 of the Bankruptcy Code shall automatically be terminated; and (c) the Prepetition Secured Lender shall be permitted to exercise all remedies set forth in this Order, in the Prepetition Agreements and as otherwise available at law against the

Collateral, without further order of or application or motion to this Court, and without restriction

or restraint by any stay under sections 362 or 105 of the Bankruptcy Code or otherwise.

18.     Nothing contained in this Order shall be deemed a finding with respect to

adequate protection (as that term is defined in section 361 of the Bankruptcy Code) of the

interests of the Prepetition Secured Lender.  In addition, except as expressly set forth in this

Order, the entry of this Order is without prejudice to, and does not constitute a waiver of,

expressly or implicitly, or otherwise impair, any of the rights, claims or privileges of the

Prepetition Secured Lender.  Without limiting the foregoing, the entry of this Order is without

prejudice to, and does not constitute a waiver of, expressly or implicitly:  (a) the Prepetition

Secured Lender's right to seek any other or supplemental relief in respect of the Debtor,

including the right to seek additional adequate protection (without prejudice to any other person's

right to object to or otherwise oppose such additional adequate protection); or (b) any other

rights of the Prepetition Secured Lender under the Bankruptcy Code or under non-bankruptcy

law, including, without limitation, the right to (i) request modification of the automatic stay of

section 362 of the Bankruptcy Code, (ii) request dismissal of the Debtor's case, conversion of

such case to a case under chapter 7 of the Bankruptcy Code or appointment of a chapter 11

trustee or examiner with expanded powers; or (iii) propose a chapter 11 plan or plans.  Nothing

in this Order shall impair or modify the application of section 507(b) of the Bankruptcy Code to

the Prepetition Secured Lender.

**Cash Management**

19.     The Debtor shall deposit all of its current and future Cash Collateral in the

account or accounts established by the Debtor at an authorized depository institution directed by

the Prepetition Secured Lender in accordance with the Order.  In addition, the Debtor shall

cooperate with the Prepetition Secured Lender immediately to effectuate with third parties the

payment of all future rents and other amounts due by such third parties to the Debtor directly into

such accounts. Within 24 hours of the entry of this Order, the Debtor shall provide to the

Prepetition Secured Lender a detailed written summary in such form requested by them of cash

on deposit with any institution as of or after the Petition Date, including, as to any deposit, the

identity of the institution at which any such deposit is maintained and the amount of such

deposit.

**Miscellaneous**

         20.     The Debtor (A) hereby releases and discharges the Prepetition Secured

Lender and its agents, attorneys, officers, directors, affiliates and employees from any and all

claims and causes of action arising out of the relationship of the Prepetition Secured Lender with

the Debtor in connection with the entry of this Order; and (B) hereby waives any and all defenses

to the Prepetition Secured Lender's security interests in and liens and mortgages on the

Prepetition Collateral. The release, discharge and waivers set forth above will be deemed

effective as of the date of the entry of this Order.

         21.     Notwithstanding the foregoing releases, prior to the sixtieth (60th) day

after the entry of this Order (the "Challenge Period Deadline") any Committee and any party in

interest, other than the Debtor, shall be permitted to file an adversary complaint with this Court,

with reasonable particularity: (a) challenging the validity, enforceability, extent or priority of

any Prepetition Indebtedness or the Prepetition Secured Lender's liens in the Prepetition

Collateral; or (b) otherwise asserting any claims or causes of action against the Prepetition

Secured Lender arising out of prepetition activities (a "Challenge Action"). Any Challenge

Action may be filed by any Committee in the name of the Debtor without further leave of Court.

To the extent that: (a) a Challenge Action is not filed by the Challenge Period Deadline by any

Committee or other party in interest with respect to any Prepetition Indebtedness or the liens or

security interests of the Prepetition Secured Lender; or (b) if a Challenge Action is so filed, the

Prepetition Secured Lender ultimately prevails thereon (whether initially, on appeal or

otherwise), (i) such Prepetition Indebtedness shall constitute allowed claims in a principal

amount as of the Petition Date, of no less than set forth in this Order (plus all applicable interest,

fees, expenses and other amounts as set forth in the Prepetition Agreements) for all purposes in

the Debtor's bankruptcy proceedings and any subsequent proceedings under the Bankruptcy

Code and shall not be subject to avoidance or any other challenge by any party (including any

successor trustee, examiner or responsible person in these or any subsequent proceedings under

the Bankruptcy Code), and (ii) the Prepetition Secured Lender's liens and security interests on

the Prepetition Collateral shall be deemed legal, valid, binding, perfected and otherwise

unavoidable and shall not be subject to avoidance or any other challenge by any party (including

any successor trustee, examiner or responsible person in these or any subsequent proceedings

under the Bankruptcy Code).

22.     The Debtor shall maintain all necessary insurance, including, without

limitation, life, fire, hazard, comprehensive, public liability and workmen's compensation as may

be currently in effect, and obtain such additional insurance in an amount as is appropriate for the

business in which the Debtor is engaged, naming the Prepetition Secured Lender as a loss payee

with respect thereto.  To the extent not previously provided since the Petition Date, the Debtor

shall provide the Prepetition Secured Lender and the Unites States Trustee with written evidence

of all such coverage (including, without limitation, evidence that the Collateral is insured for the

full replacement value thereof), as well as prompt notification of any change in such coverage

that may hereafter occur.

23.     The Prepetition Secured Lender shall not be required to file a proof of claim with respect to any of the Prepetition Indebtedness, and the stipulations and findings set forth in this Order shall constitute an informal proof of claim in respect thereof.

24.     In accepting the Budget, making decisions to release Cash Collateral, and by taking any other actions pursuant to this Order, the Prepetition Secured Lender ~~shall not have any liability to any third party and~~ shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner" or "operator" with respect to the operation or management of the Debtor.  No third party is intended to be or shall be deemed to be a third party beneficiary of the provisions of this Order.

25.     This Order shall be valid and fully effective, shall be binding upon and inure to the benefit of the Prepetition Secured Lender, the Debtor, the Estate and their respective successors and assigns (including, without limitation, any trustee, examiner or responsible person in this or any subsequent proceeding under the Bankruptcy Code), immediately upon its entry and during the pendency of the Debtor's bankruptcy proceeding, subject to the right of the Prepetition Secured Lender to terminate its consent to the Debtor's use of Cash Collateral as provided in this Order or the expiration of such consent on the date set forth herein.  The terms and provisions of this Order, including the claims, liens, security interests, mortgages and other protections granted to the Prepetition Secured Lender pursuant hereto shall continue in the Debtor's case, or in any successor case, and all such liens and security interests shall maintain their priority as provided by this Order, until the indefeasible payment in full of all obligations owed the Debtor to the Prepetition Secured Lender.

26.     The Prepetition Secured Lender shall not be subject to the equitable doctrine of marshalling with respect to the Collateral.

27.     The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated as to the Prepetition Secured Lender to the extent necessary to implement the terms of this Order and to permit the Prepetition Secured Lender to implement the provisions hereof, including, without limitation, permitting the Prepetition Secured Lender, inter alia, (a) to receive and apply collections, payments or proceeds of Collateral, (b) to file any financing statements or other instruments and documents, if any, evidencing their security interests in and liens and mortgages on the Collateral, and (c) to charge any fees and interest as provided in this Order.

28.     The Debtor shall not seek to modify, vacate or amend this Order without the consent of the Prepetition Secured Lender.  If any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacation shall not affect:  (a) the validity of any benefit granted to the Prepetition Secured Lender pursuant to this Order prior to the later of (i) the effective date of such stay, modification or vacation; and (ii) receipt of written notice thereof by counsel to the Prepetition Secured Lender at the address listed at the end of this Order (the "Effective Time"); or (b) the validity and enforceability of any lien, security interest, mortgage or priority authorized hereby. Notwithstanding any such stay, modification or vacation, any release of Cash Collateral made pursuant to this Order by the Prepetition Secured Lender prior to the Effective Time shall be governed in all respects by the original provisions of this Order.

29.     The Prepetition Secured Lender may consent in writing to extend the Debtor's use of Cash Collateral pursuant to this Order without further hearing or order of this Court.  If the Prepetition Secured Lender determines to do so, written notification of such extension shall be provided to all parties-in-interest.

## Notice Provisions

        30.     The Debtor shall, within three (3) business days of the entry of this Order,

serve by overnight mail, facsimile transmission or electronic mail copies of this Order and a

notice of entry of this Order to the Prepetition Secured Lender, its counsel at the address set forth

at the end of this Order, counsel for the Committee, if any, when and if appointed, the

twenty (20) largest unsecured creditors of the Debtor as set forth on schedules filed by the

Debtor pursuant to Bankruptcy Rule 1007(d), the United States Trustee, any other persons which

the Debtor knows are entitled to notice under Bankruptcy Rule 4001(b) as of such date, and any

other party-in-interest for which counsel to the Debtor has received a written request in this case

before noon (Chicago Time) on such date to receive such pleadings.

CHI-1755503v6

Dated: JUN 15 2010
Dated: _____, 2010

_____
UNITED STATES BANKRUPTCY JUDGE

Consented to:

Highlands of Montour Run LLC

By: _____
    One of Its Attorneys

ROBBINS, SALOMON & PATT LTD
Richard H. Fimoff
25 E. Washington Street
Suite 1000
Chicago, IL 60602
Telephone  (312) 456-0185
Facsimile  (312) 782-6690
Email:  rfimoff@rsplaw.com

WELLS FARGO BANK, N.A.

By: _____
    One of Its Attorneys

JONES DAY
Brad B. Erens, Esq.
Robert E. Krebs, Esq.
77 W. Wacker Drive
Chicago, IL 60601-1692
Telephone  (312) 782-3939
Facsimile  (312) 782-8585
Email:  bberens@jonesday.com
Email:  rkrebs@jonesday.com
Email:  dchi@jonesday.com