UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE: )
) Case No. 10 B 21678
HIGHLANDS OF MONTOUR RUN, LLC )
An Illinois limited liability company, ) Chapter 11
    Debtor. )
) Judge Pamela S. Hollis

## MEMORANDUM OPINION

This matter is before the court on the objection of Wells Fargo Bank, N.A. ("Wells Fargo") and its successor-in-interest German American Capital Corporation ("GACC," herein referred to collectively as the "Bank,")[1] to the motion of Highlands of Montour Run, LLC (the "Debtor") to approve its disclosure statement. For the foregoing reasons, the Bank's objection is sustained.

## FACTS AND BACKGROUND

The Debtor filed a voluntary petition for Chapter 11 on May 12, 2010. The Debtor, a single asset real estate debtor as defined in 11 U.S.C. § 101(51B), owns a residential rental apartment complex in Corapolis, Pennsylvania (the "Property"). (Docket. No. 39, Debtor Schedule A.)[2] The Bank holds a first mortgage (the "Mortgage") on the Property. On November 3, 2010, this court entered an order conditioning the automatic stay on strict compliance with 11 U.S.C. § 362(d)(3)(B) (the "Strict Compliance Order"). The Debtor was ordered to, on or before November 15, 2010, cure existing defaults including the failure to pay the Bank adequate

---

[1] On April 1, 2011, Wells Fargo assigned its claim against the Debtor as well as its right, title, and interest relating to such claim and the obligations of the Debtor to GACC. (Docket No. 215.)
[2] The Court takes judicial notice of the docket in this case. *See In re Salem*, 465 F.3d 767, 771 (7th Cir. 2006) (taking judicial notice of dockets and opinions).

protection payments and the failure to make monthly interest payments on the pre-petition indebtedness at the non-default contract rate of interest prescribed in the Mortgage.

On December 9, 2010, the Bank filed a notice of default and termination of the automatic stay, stating that the Debtor violated the Strict Compliance Order in failing to make certain payments. On December 13, 2010, the Debtor filed an emergency motion for a preliminary injunction and/or temporary restraining order requesting that the court "reimpose" the automatic stay. On December 14, 2010, the court denied the Debtor's motion.

The Bank stated in its objection that it obtained a writ of possession directing the Sheriff of Allegheny County to deliver possession of the Property to the Bank. (Bank Objection at p. 2; Murray Declaration ¶ 4.)[3] The Bank indicated that it took possession of the Property on December 27, 2010 and activated its right to collect rents generated from the Property on December 27, 2010 by providing notice to tenants to deliver rent payments to the Bank's agent, Lincoln Management. (Bank Objection at pp. 2, 7; Murray Declaration ¶ 6-7.) On December 30, 2010, and again on February 4, 2011, the Bank notified the Debtor of its intent to seek entry of a default judgment in the pending foreclosure action it had filed pre-petition. (Bank Objection at p. 3; Murray Declaration ¶ 8.)

On January 3, 2011, the Debtor filed its first amended plan of reorganization (the "Plan") and on January 5, 2011 it filed an amended disclosure statement (the "Disclosure Statement"). (Docket Nos. 156 & 161.) The Disclosure Statement provided that all payments to be made under the Plan would be made from 1.) rental and other income generated by the Property, 2.) the recoveries, if any, from any causes of action, and 3.) the proceeds of the sale or refinancing of

---

[3] The Bank submitted two documents entitled "Exhibit A" to its Objection—the Murray Declaration and the Mortgage. For ease of reference, the court will refer to each exhibit as either "Murray Declaration" or "Mortgage."

2

the Property. (Disclosure Statement at p. 12.) The Bank filed this objection on February 11, 2011.

## DISCUSSION

The Bank objects to the Disclosure Statement for two reasons. First, the Bank asserts that the Plan is unconfirmable because the Debtor no longer has the right to rents or income generated by the Property. Second, the Bank contends that the Disclosure Statement fails to provide adequate information.

### I. The Rents

The Bank first objects to the approval of the Disclosure Statement on the basis that it provides for the funding of the Plan, primarily, through the use of rents generated from the Property and the sale or refinancing of the Property and that, under Pennsylvania law, the rents cannot be used to fund the Plan as the Debtor no longer has a license to the rents.

State law defines the legal and equitable interests held by a debtor. *Butner v. United States*, 440 U.S. 48, 55 (1979). While state law may define the interest, whether a debtor's interest is property of the estate under 11 U.S.C. § 541 is a question of federal law. *Fisher v. Apostolou*, 155 F.3d 876, 880 (7th Cir. 1998).

As a title theory state, Pennsylvania treats mortgages and assignments as conveyances. *Pines v. Farrell*, 848 A.2d 94, 99-100 (Pa. 2004); *Commerce Bank v. Mountain View Vill., Inc.*, 5 F.3d 34, 38 (3d Cir. 1993). Where a rent assignment exists, a mortgagee may assert its right to receive rents, upon default, either by taking actual possession, *In re SeSide Co., Ltd.*, 152 B.R. 878, 883 (E.D. Pa. 1993), or through constructive possession, *Sovereign Bank v. Schwab*, 414 F.3d 450, 453 (3d Cir. 2005). Constructive possession may be accomplished by sending notice to tenants and collecting rents. *Id.*

3

### a. Assignment Versus Security Interest

The Debtor asserts, for the first time, that the assignment of rents in the Mortgage was not an assignment, but a security interest. In support of this argument, the Debtor cites *In re 400 Walnut Assocs. LP*, 10-16094 SR, 2011 WL 915328 (Bankr. E.D. Pa. Feb. 22, 2011). *Walnut Associates* involved a mortgage instrument which, within the same subsection, stated that rents were assigned absolutely and that rents were not included among the "Mortgaged Property," but then stated that in the event the rents have not been found to be assigned to the lender, the rents are included in the "Mortgaged Property" and it is then a security interest. *Id.* at *4. The court determined that the subsection would support both an interpretation that there was a clear assignment of rents and that a security interest was granted in rents. *Id.* Therefore, the court held that, in accordance with the principle of *contra proferentum*, the provision should be construed as a security interest as that interpretation was most favorable to the debtor. *Id.*

Here, the language is consistent within the same subsection. The assignment provides, in relevant part:

> Mortgagor hereby irrevocably assigns to Mortgagee all of Mortgagor's right, title and interest in, to and under . . . (b) the rents, revenue, income, issues, deposits, and profits of the Subject Property, including, without limitation, all amounts payable and all rights and benefits accruing to Mortgagor under the Leases ("Payments"). . . . This is a present and absolute assignment, not an assignment for security purposes only, and Mortgagee's right to the Leases and Payments is not contingent upon, and may be exercised without possession of, the Subject Property. . . . [T]his assignment shall be fully operative without regard to value of the Subject Property or without regard to the adequacy of the Subject Property to serve as security for the obligations owed by Mortgagor to Mortgagee, and shall be in addition to any rights at law or equity.

(Mortgage, Art. 3.1.) Article 3.2 of the Mortgage grants the Debtor a license in the rents, but "[u]pon a default, the License shall be automatically revoked and Mortgagee may collect and

4

apply the Payments pursuant to that certain Section entitled <u>Application of Other Sums</u> . . . ." None of the language with respect to the assignment of rents allows any reasonable interpretation other than a clear, unambiguous assignment of rents to the Bank. The Debtor's argument that the definition of "collateral" in the Mortgage includes rents is unpersuasive. By its terms, the assignment provision is an absolute assignment and not for security purposes only. It is not a "one size fits all" approach as was found in *Walnut Associates* and *In re Village Green*, 435 B.R. 525 (Bankr. W.D. Tenn. 2010), which *Walnut Associates* cites. Therefore, the court need not delve further into the document as *Walnut Associates* and *Village Green* did.

Even if the court were to consider other parts of the Mortgage which purport to include "rents" in the definition of "Collateral" in which the Bank has a security interest, the Bank is correct that the specific term should prevail over the more general one. *See In re The Aspen Street Corp.*, 405 B.R. 767, 778 (Bankr. E.D. Pa. 2009) (giving greater weight to the more specific provision than the general provision, applying general contract principles to a plan of reorganization). Here, Article 3.1 clearly and unequivocally provides that the Bank has a present and absolute assignment, not an assignment for security purposes only. The later inclusion of rents with "Collateral" in which the Bank has a security interest is boilerplate, including "virtually every conceivable interest in anything relating to, incorporated into, used in connection with, or appropriated for use on the Subject Property" as the Debtor aptly points out. (Debtor Response at p. 5.)

This case is further distinguishable from *Walnut Associates* as the stay has been lifted in this case and the Bank has asserted its right to the rents by taking possession of the Property and notifying the tenants to begin paying rent to the Bank. In *Walnut Associates*, the creditor had asserted its right to rents pre-petition, but then reached an agreement with the debtor whereby the

5

debtor resumed accepting rents from tenants, rescinding the creditor's earlier demand notice. *Walnut Assocs.*, 2011 WL 915328, at *6. Upon filing bankruptcy, the automatic stay went into effect and was not lifted to allow the creditor to re-assert its right to rents upon default. *Id.* This is the critical distinction between this case and *Walnut Associates*. The court finds that the Mortgage absolutely assigned rents to the Bank and cannot, on its face, be construed as only granting a security interest.

### b. Availability of the Rents to Fund the Plan

The Bank argues that under Pennsylvania law, it has title to the rents and the Debtor no longer has a property interest in future rents. *See Sovereign Bank*, 414 F.3d at 453 (mortgagee's notice to tenants, after mortgagor's default, was sufficient to enforce its rights and extinguished the debtor-mortgagor's interest in the rents); *Mountain View*, 5 F.3d at 38 (rents not property of the estate where mortgagee enforced its right to rents pre-petition); *Robin Assocs. v. Metro Bank & Trust Co. (In re Robin Assocs.)*, 275 B.R. 218, 223 (Bankr. W.D. Pa. 2001) (rents not property of the estate where notice was served on tenants after default as mortgagee obtained "ownership of assigned rents from the moment that notice [was] served by the mortgagee to a mortgagor's tenants to commence making rental payments to the mortgagee . . . .").

The Debtor raises a number of arguments refuting the Bank's conclusion. First, the Debtor contends that the rents are property of the estate, citing *In re Amaravathi Ltd. P'ship*, 416 B.R. 618 (Bankr. S.D. Tex. 2009), *In re Bryant Manor, LLC*, 422 B.R. 278 (Bankr D. Kan. 2010), and *In re Las Torres Dev., L.L.C.*, 408 B.R. 876 (Bankr. S.D. Tex. 2009). Those cases set forth the general rule, embodied in 11 U.S.C. § 541(a)(6), that post-petition rents generated from property of the estate are themselves property of the estate. In none of those cases did the court lift the automatic stay and in none of those cases did the creditor take possession of the property

at issue. In *Bryant Manor* and *Las Torres*, the assignment of rents was found to be a security interest, not an absolute assignment. *Bryant Manor*, 422 B.R. at 286-87; *Las Torres*, 408 B.R. at 885.

The Debtor argues that the lifting of the automatic stay did not remove the rents from the property of the estate; it simply removed or modified the injunction prohibiting collection actions against the Property. While this may be true, the Bank took additional steps to enforce its right to the rents and is currently in possession of the Property and the rents. The Debtor also argues that it retains an interest in the rents as the Bank must account to the Debtor for the amount of rents received and credit the mortgage debt accordingly. *See Mountain View*, 5 F.3d at 38. *See also* Mortgage Art. 6.4 ("All sums received by Mortgagee under that certain Section entitled . . . Grant of License . . . shall be applied in payment of the Secured Obligations in such order as Mortgagee shall determine in its sole discretion[.]") What the Debtor fails to understand is that while it may possess a right to an accounting, it no longer possesses the license to collect and use the rents as it pleases, but is now left with lesser rights. When the Bank came into possession of the Property and served notice upon tenants, it enforced its right to rents under the Mortgage. The Debtor may have a right to an accounting and a contingent right in the rents upon payment in full of the indebtedness under the Mortgage, *see In re Union Meeting Partners*, 160 B.R. 757, 767 (Bankr. E.D. Pa. 1993) ("[O]nce the mortgagee's claim is paid in full, the remaining rents belong to the [d]ebtor."), but neither gives the Debtor a license to use the rents in the Plan.

The Debtor next argues that *Mountain View* is distinguishable and does not prevent the Debtor's use of the rents. The Debtor contends that the critical distinction between *Mountain View* and this case is that here, the rents have always been property of the estate and in *Mountain View* title to the rents vested prior to filing bankruptcy. The Debtor fails to explain the impact of

7

this difference, but cites *In re River Village Assocs.*, 161 B.R. 127 (Bankr E.D. Pa. 1993) for support. In that case, the court considered a plan which called for the use of rents for funding over the objection of the mortgage-holder. *Id.* at 134. The Debtor contends that *River Village* made the important distinction the Debtor seeks to make here—namely that on the petition date, the debtor was still collecting rents on the property. *See id.* at 129.

There are a number of distinctions worth noting. First, *Mountain View* was decided under Pennsylvania law whereas *River Village* was decided under Delaware law. *River Village* explained that "[t]he *Mountain View* court [made] several references to Pennsylvania decision which have no Delaware law analogues in rendering its decision." *Id.* at 134. Second, although the automatic stay was lifted in *River Village*, it was only limited relief as it prevented the mortgage-holder from executing upon any foreclosure judgment obtained if the debtor filed a plan of reorganization by a certain date. *Id.* at 129 (the limited relief from stay "should not have been interpreted as allowing [the mortgagee] to demand rent payments from the tenants . . . ."). The mortgagee in *Mountain View* had served notice on the tenants and was collecting rents prior to the bankruptcy case whereas the mortgage-holder in *River Village* did not take any pre-petition or post-petition action that created a valid lien on the rents. *Id.* at 134. Here, Pennsylvania law does apply and the Bank has taken the appropriate steps to assert its right to the rents. The Debtor seems to suggest that its property rights were frozen on the petition date and could not change going forward. This is incorrect; the Debtor's property rights were altered after the automatic stay was lifted and the Bank took possession of the Property and notified tenants to begin paying rent to it instead of the Debtor.

The Debtor next argues that 11 U.S.C. § 552(b)(2), as amended in 1994, set a federal standard that the assignment of rents creates an enforceable security interest, rendering state law

irrelevant. Section 552 deals with the post-petition effect of a security interests. The 1994 Amendments to the Bankruptcy Code separated rents from other types of interests generated by collateral such as profits, proceeds, products, and offspring, creating subsection (b)(2). This new subsection, unlike the old subsection, omitted the phrase "applicable non-bankruptcy law." The Debtor contends that this evidences Congress's intent to create a federal, not a state law, standard for security interests. First, the court notes that, as already explained, the Mortgage did not grant a security interest in the rents, it was an absolute assignment coupled with a license. Therefore, § 552 is inapplicable. Second, as admitted in the article cited by the Debtor, the legislative history suggests that "Congress intended to preempt contrary state laws that would limit the postpetition effectiveness of an assignment of rents." *The Circus Continues—Security Interests in Rents, Congress, The Bankruptcy Courts, and the "Rents are Subsumed in the Land" Hypothesis*, 6 J. BANKR. L. & PRACTICE 115, 119 (Jan./Feb. 1997). The Debtor misconstrues the effect and intent of § 552(b)(2). First, § 552(b)(2) states only that a security interest in rents created prior to commencement of a case continues after commencement of the case. It does not purport to set a federal standard for all issues concerning the enforceability of security interests in rents. In fact, the article went on to explain that a wholly federal standard for the enforceability of security interests in rents is problematic because they are still subject to the strong-arm powers of 11 U.S.C. § 544, which applies underlying state law. *Id.* at 120-21. For these reasons, the court finds that Pennsylvania law governs the enforceability of the assignment of rents in the Mortgage.

Finally, the Debtor contends that the Plan is allowed to modify the rights of the Bank pursuant to § 1123(b)(5) which allows a plan to modify the rights of secured claimants other than claims secured by a security interest in real property that is the debtor's principle residence. 11 U.S.C. § 1123(b)(5). In support, the Debtor cites *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004).

That case, a Chapter 13, explained that a court has authority to "modify the number, timing, or amount of the installment payments from those set forth in the debtor's original contract . . . ." *Id.* at 475. The Debtor asserts that the court, here, may reinstate the Debtor's license to use the rents and the "mortgage would be reinstated as if Debtor's default had not occurred." (Debtor Response at p. 14.) Reinstating the Debtor's license is quite different from modifying loan terms. To reinstate the license now would deprive the Bank of its right to possession of the Property and right to the rents. What the Debtor is really asking the court to do is to "reimpose" the automatic stay and act as if the Debtor had not violated the Strict Compliance Order.

The Debtor argues that the Bankruptcy Code explicitly provides the right to cure a default or reinstate an obligation that has been lost as a result of default, citing *In re NextWave Pers. Commcn's Inc.*, 244 B.R. 253, 268 (Bankr. S.D.N.Y. 2000). It is true that a debtor may typically cure a default. In fact, *NextWave* explained that "[o]ne of the essential objectives of the automatic stay . . . is to avoid the effective nullification of other provisions of the Bankruptcy Code designed to facilitate the central Code objective of reorganization, including the right to cure defaults . . . ." *Id.* However, none of those cases involved the lifting of the automatic stay. The Debtor has already had an opportunity to cure default under the Strict Compliance Order, but failed to do so and, thus, the automatic stay was lifted. The Debtor cites no case in which a court allowed a debtor to cure a default and bring rents back into the estate after the creditor asserted its legal right to collect and use those rents. The court has already denied the Debtor's motion for a preliminary injunction of the lifting of the automatic stay, but the Debtor now seeks to use § 1123(b)(5) to do the same in its Plan. The court will not allow the Debtor to use § 1123(b)(5) to divest a rightful possessor of its property and reinstate that property with the debtor after the automatic stay has been lifted.

The Bank properly obtained possession of the Property and asserted its right to the rents by serving notice on the tenants to pay rent to the Bank. The Debtor provides no good reason for divergence from the precedents set forth in *Sovereign Bank*, *Mountain View*, and *Robins Associates*. Although the Debtor may retain some interest in the rents, it does not have the right to receive and use the rents as it wishes. Therefore, the court sustains the Bank's objection to the Disclosure Statement.

Because the court finds that the Debtor cannot use the rents in the Plan, the Bank's arguments with respect to adequate information need not be addressed. The court disapproves the Disclosure Statement because the Plan is not confirmable as it was to be funded almost entirely through those rents. *See In re Amigoni*, 109 B.R. 341, 341-42, 347 (Bankr. N.D. Ill. 1989) (disapproving disclosure statement where plan was not confirmable).

## CONCLUSION

For the reasons stated herein, the Bank's objection to the Disclosure Statement is sustained and the Disclosure Statement is disapproved.

This opinion constitutes the court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order will be issued pursuant to Federal Rule of Bankruptcy Procedure 9021.

ENTERED:

DATE:  JUN -6 2011

PAMELA S. HOLLIS
United States Bankruptcy Judge